The case this morning is 2012-1163 Horizon Lines v. U.S. Mr. Kenner. Whenever you're ready. May it please the Court. This decision needs to be reversed for three reasons. First, the lower court lacked jurisdiction over the epoxy undercoat of paint because Horizon Lines specifically excluded it from its protest. Second, the Court found 10 square meters of blistering and corrosion, yet allowed the work to repair these areas to escape duty assessed by U.S.C. 1466 while not requiring Horizon Lines to segregate its invoice into dutiable and non-dutable portions pursuant to 19 CFR 4.14. Finally, the Court clearly erred in determining that only 10 square meters of the hull were corroded and clearly erred when it ignored the need for a maintenance coat of paint on the Crusader's hull when it arrived in the shipyard. Is the question of whether something constitutes a repair a factual inquiry? Well, Your Honor, the 19 U.S.C. 1466 duties repairs. Repairs is used in its common meaning, meaning you're putting something that sustained damage back into good working order. Here, the Court did find 10 square meters of corrosion and blistering that the testimony bore out that corrosion is a complete failure of the paint and it needed to be restored and repaired and that the coat needed to be maintained. So the Court did make a factual finding that there was corrosion and blistering. The error was in not dutying that pursuant to the statute. Are the two equivalent? Because there's blistering, does that mean it's not in good working order? I mean, are those necessarily the same thing? Well, there was blistering and corrosion. Corrosion, the testimony bore out was where the paint has completely come off the vessel and the underwater hull is being corroded. So who gets to decide whether something is – do you agree the standard is whether or not it's in good working order? Well, the standard is when something which has sustained damage or become imperfect through the elements is restored to sound working order. Here, the testimony was uncontradicted that when the Crusaders – Restorate, when you use the term restored to good working order, that assumes, therefore, can we agree that it was not in good working order before the repair? Certainly. When repairs are necessary to a part or a piece, it is not in good working order. Well, don't we have a finding here by the court that it was in good working order, notwithstanding whatever level of blistering there was? Well, there was a finding by the court that it was in good working order. There was a factual finding that there were 10 square meters that were corroded and blistered. And there were legal findings that the repairs to those sections were simply incidental and irrelevant. The thing is, once repairs are conducted, it can't be incidental and irrelevant, and it's dutiable. This goes back to my original question that you never really answered, and that is, is the question of good working order a factual finding or a legal finding? I believe it's a mixed question, but the factual finding was already made that there was corrosion and there was blistering. The legal error was in finding that it was not dutiable and that the hull was in good working order, despite the fact that it did exhibit corrosion that was in need of repair. The testimony was clear. You're saying if there's any corrosion, say it was 1%, then the judge would not be able to make a factual finding that it was still in good working order? If that 1% of corrosion needs to be repaired, no, it is not in good working order. What does it mean, needs to be repaired? Who establishes whether it needs to be repaired or whatever? I mean, the court here made a finding that it didn't need to be repaired because it was in good working order. Actually, the legal finding was that any repairs to those areas were simply irrelevant or incidental. There was no finding that they did not need to be repaired. It was just that the court found them to be irrelevant and incidental to the overall… Wasn't there a finding that it was in good working order? Yes, Your Honor. Blistering. So is not a finding of good working order sort of equivalent to saying there was no need to repair it? Aren't the two one and the same? Even if this were… Can you answer the question? Are they one and the same? No, it appears to me to be in conflict, that there's a factual finding that there's damage, but it's also found in good working order. I don't believe that the hole could be found to be good working order. Well, I get a nick in my car because somebody scratched it with the key accidentally. I've got one little one-inch little nick on my car. Is the car in good working order or not? Well, in that case, the car may be in good working order, but what we have here is… Well, I mean, it is in good working order, right? Here you have the testimony that… Right? I know you're in a hurry to get to the next point, but you've got to answer the questions before you can move on to the next point. Oh, I mean, if the key starts rusting in that little area, then no, the paint is not in good working order. The idea of paint is to preserve the metal in an uncorroded state. Here you have areas where the paint is completely missing and the hole is being corroded. So back to Judge O'Malley's point, you're saying that the finding of whether or not something is in good working order, notwithstanding whatever level of blistering there is, is a legal question and not a factual question? I believe it has to be a factual finding as to whether there was any damage existing on the hole. And here the factual finding was there was damage existing on the hole, but the court made the legal error to say that could be irrelevant and inconsequential under 19 U.S.C. 1466. But there is no de minimis or inconsequential built into 19 U.S.C. 1466. It simply duties anything that is repaired. It's a protectionist provision. It must be read broadly. It's designed to protect the domestic ship repair industry. And here you have… We've got our precedent and horizon lines, the first one, which you rely on as well. And we said we do not conclude, however, that the prior condition is always dispositive of whether work constitutes repair or modification. We note that there would be no need to repair a part that is in working order. So irrespective of whether de minimis is the right standard or not, the court below clearly had to make a determination of whether or not the repair that is – there's a need to repair something that is in working order, right? Well, certainly, and this court said horizon lines, there's no need to repair something in good working order. Here there was no dispute that the corrosion needed to be repaired. There's no dispute that the hole needed to be grip blasted where there was corrosion. It needed to be re-epoxied, and it needed a maintenance coat of paint. So there was never any dispute that the hole needed repairs. Well, what horizon says is that they tie the need to repair to whether or not something is in good working order. Here there was clearly a dispute as to whether or not it was in good working order, correct? And the CIT judge found in favor of horizon on that question, right? Well, here it was never contested that the corrosion needed to be repaired. What was contested was the overall purpose of the work. They indicate had it not been for the IMO standards, they would have had to do their normal repair maintenance work, and they subsumed that into the IMO. So there was never any issue of whether there was areas on the hole that needed to be repaired. It was conceded that there were areas of corrosion that needed to be spot blasted and needed to be re-coated with epoxy. You had areas of rust. You had areas of blistering. And you also had the need for a maintenance coat of paint to protect the hole until the next dry docking. In fact, in horizon's post-trial brief, which can be found at JAH 1630, 1718, and 1633, they acknowledged that there was the requirement for the normal maintenance repair. There was a requirement for spot blasting. They would have been required to do a maintenance coat of paint to protect the hole until the next dry docking cycle. It simply was the case that they combined these repair items with the IMO. So it's not that the hole was in no need of repair. In fact, I thought there was a finding below that there was no need for repair. No section required repairs. So were you challenging that as a factual finding? Well, yes, Your Honor. The factual finding was 10 square meters were damaged and corroded. And then the legal finding was, while it was in good working order, it says that any repairs that were done on the hole were irrelevant and incidental. In the legal areas, you can't have repairs necessary and repairs performed and then have them be incidental and irrelevant under the statute. But the court specifically found that the paint system was in good order and would have lasted for an indefinite time past the dry docking date. So when you say that it was conceded that it needed to be repaired and needs to be repaired right then, I don't know how you can say that. I mean, the court made a specific finding of fact that that was not the case. Specifically, finding of fact 16, which is on JA3, it found that the Crusader's Hole had approximately 10 square meters of blistering and corrosion. Right, but he's saying despite that, in number 32, that it would have lasted indefinitely. It may have lasted on those areas where there was paint, but there was areas where there was absolutely no paint and it was brush showing through. And at legal conclusions 4 and 5, it states that any repairs affected were simply incidental and irrelevant. So the court acknowledged that there was corrosion and that there were repairs. All right, let me give you another analogy. So say that there was an undisputed modification. Say you changed an actual system on the ship, but in doing so, because you had to finalize the placement of it, you also happened to repaint around the edges. And around those edges, you would have eventually had to repaint. So you're saying that if anything actually causes a repair, whether it would be needed to be done now or needed to be done two years from now, that everything becomes dutiable? If there was no corrosion two years down the road, it would have been damaged. It may not be damaged at the time. The court made the finding that despite blistering, that it would have lasted for an indefinite period of time. How do you get around this? The fact that there's 10 percent or 10 square meters of corrosion, so while the paint in the areas that would still exist might have lasted, the court found that there was areas of corrosion and corrosion is where the paint is completely 100 percent missing and the steel is being… But he didn't find that those areas where there was corrosion would not have lasted. He found that the entirety of the paint system would have lasted. Well, then if it's a factual issue, it would have to be a clear error because he has found areas where the paint is no longer in existence, and the testimony was unrefuted that they would have had to repair those corroded areas. But he said it was minimal and it was incidental. So, I mean, like such a car example, I mean, suppose that her car has one tiny nick, I mean, like barely a scratch in one area on the entire surface of her car, she nonetheless decides to go get the entire car repainted. Not because of that nick, just because this has been so many years, she wants a new color, whatever. I mean, really, that one little nick, the fact that there is one little nick is going to necessitate treating the entire painting job the way that you're advocating? No, Your Honor, that's why you have 19 CFR 414 to segregate out the 10 square meters or whatever, or the nick that needs to be repaired from the rest of the non-dutiable job. It just so happens here that Horizonline chose not to segregate out the dutiable and non-dutiable portions of the job, which renders the entirety of it dutiable. And I would note that in text code footnote 9, this court indicated that with respect to a cleaning charge, there was testimony that half the cleaning would have been necessary even if there hadn't been repairs, but the ship owner made no attempt to segregate those costs out. And here, I'm sorry, I assume it's my rebuttal time, Your Honor. Just let me confirm one thing. So what you're saying is that we would have to find that the mere existence of corrosion anywhere, even my 1% hypothetical, is enough to require a repair. So we'd have to say that means that his conclusion that it would have lasted indefinitely or it didn't need to be repaired at that point in time is clear error. Yes, Your Honor. Can I just – I know you're into your rebuttal, and we'll give you a little, you know, what you've claimed before. But on that point, I mean, you're saying that someone like Horizon has to come up with not the actual cost, but come up with some hypothetical cost or figure that that's their burden to do that in order to do the calculation? Yes, Your Honor. And here you have a paint report that they have done beforehand, which tells them the percentage of the hull that requires damage or requires repairs. They have inspections. They have court directors looking and photographing damage. And the testimony at trial was those portions are easily segregable out. It would just be a percentage. It could have been a percentage. It could have been a square foot charge. It could have been something. It was – there's no testimony that it could not have been done here. And it is their burden under the regulations to segregate out if they're claiming that there's dutyable or non-dutyable or if there is dutyable or non-dutyable work occurring on the same invoice. About the second issue, with respect to invoice number 15, it's very unclear what it is you want here. But are you saying that we somehow should subtract $1,400 worth of repairs or painting out? Is that what you're looking at? No, Your Honor. That's what should have been done at the administrative level. They failed to segregate it out, which renders the entire invoice now dutyable. But it's only – it's a $1,400 figure that you're saying that they supposedly put in 15 and should have taken out of the $50,014? I don't know the exact dollar amount for the epoxy undercoat, and I wouldn't know the exact amount for the square footage of corrosion that was repaired. But those items should have been segregated out. So even if it was $0.05 that should be segregated out, you say that that wipes out all of invoice number 14? Yes, Your Honor. I will restore your two minutes of rebuttal. Thank you, Your Honor. If you need it. Mr. Barkley? Thank you, Your Honor. Good morning. The trial court correctly applied the law in finding that no repair occurred because, number one, the work's sole, not primary, purpose was environmental compliance. Well, can we start off with the jurisdiction question that Judge O'Malley just referenced at the end? There is clearly ambiguity with respect to 15. There is ambiguity. However, the protest expressly included invoice 14A, item 3.1-4. You'll find it in your joint appendix at A1310. The language of that invoice expressly includes all the coatings work on the underwater hull, including both the anti-corrosive epoxy work and the anti-fouling overcoat. You can read the language of that, and it says, quote, completely removed tin-based coating from the hull by grit blasting 7,083 square meters. There's an inconsistency between the two. So, at best, there's ambiguity. Agreed. And why should that not be construed against you all, your side? Because the ambiguity put CBP on notice as to the invoice that was being protested. And if they went to the invoice that was protested, and the invoice is itself part of the protest, that language is unambiguous because that language uses the terms coating and the term system, and it talks about grit blasting, and the words used are broad and do not exclude epoxy. Do you have your appendix handy? I do have my appendix handy. Why don't you look on page 678. And then in particular, flip over to 680. I think this might help you a little. What you're citing is the CBP's decision. Demonstrating that they believed that the epoxy was part of the protest, correct? Of course. They used the term paint and coating. They said the protest on page 678, they said the protested items follow, and the second to last item is the $1,404 epoxy. Isn't that the... Actually... Or is that something different? Actually, that is. I'd like to say yes because it would help our case. But, in fact, the epoxy undercoat in the underwater hull is part of invoice 14A, item 3. But it's not the portion the government's referring to? No. The government, you'll have to let the government speak for itself, but the government alleges the epoxy undercoat was somehow included in some other part of invoice 15 on which the government, on which CBP did not rule. Does this document actually hurt you then because it doesn't list as any of the protested items the item that you're saying should... Oh, it does on 679. Where does it list it? On 679. But let me just note that the document that you've cited, there are actually three CBP decisions, and maybe you should just write down these numbers because it's hard to pull them all up. But it's A1421. That's the vessel repair unit's decision. Then A679-80, which is the decision that you've cited here. And then it goes to headquarters, and there's a decision which is A1426. Do all of these reference... All of them reference invoice 14A, item 3.1-4. All of them use the term paint or coating. They sometimes say tin-bearing paint or tin-free coating, but the point is that covers both epoxy and anti-fouling because both needed to be not bearing tin in order to comply with the IMO convention. So your position with respect to 15 is that despite your description of item 15, it really only related to something other than the hull? No, what it was was it turned out, although that description, that description too is erroneous, but again, it's in the invoice produced by the shipyard that was erroneous. But it turns out that that is painting work that's above the waterline. That's what pre-board means, right? Exactly, that's what the pre-board means, and also the hatch cover is up on top of the deck. So it's not included there, but let's get back to what the government says. They relied upon that statement in the protest memorandum because they thought that... At 1264? Correct. They therefore thought that the underwater epoxy was somehow included in invoice 15, but if you look at the other parts of invoice 15, none of it includes anything that could be remotely described as underwater epoxy. These are the only two that they could have even conceivably have misunderstood it as meaning, and they ruled on these as well, as Judge Moore has said. They denied the protest with regard to these two items as well. Well, look at 1264. Put aside the fact that you refer to invoice 15, which is confusing, but you say, in this case, the tin-free paint is not replacing paint that was in deteriorated condition. To the contrary, a fresh coat of regular paint was applied to the hull before anti-fouling coating was applied, and duties have been assessed on the regular paint. So what invoice is the regular paint on the hull, not the pre-board, but on the hull? It's on page A1310, and I'd ask you to turn to A1310, and I was starting to read that language because it's important that you look at the exact language and look at how inclusive that language is, that it obviously includes the entire work that was done. You'll see 3.1-4A, exterior hull tin-free coatings application. Remember the word coatings is broad. Where's the regular paint that you say you're pulling out of this? It's a coating. Coating and paint, those terms are broad, and it says completely grit-blasted. That's grit-blasting down to bare metal. That is removing both the anti-fouling overcoat and the epoxy undercoat. So this sentence that says, before we ever got to the point of putting an anti-fouling coat, we had put a regular coat of paint on. Are you saying that never happened? That did happen, and it is included in invoice. The erroneous statement is what invoice it appeared in. The invoice that it appeared in is 3.1-4A. So were duties assessed on the regular paint or not? Yes, because CBP denied the protest with regard to 3.1-4A, an invoice for $50,712. That entire invoice, which was grit-blasting to bare metal, removing all tin-bearing coatings, replacing them with tin-free coatings solely to comply with IMO and ABS requirements, as stated in the plain language of the invoice, thereby included it. And CBP, in denying the protest, ruled on this invoice in full, and used terminology that showed that it included it. So are you conceding now that you did not break out this regular paint? We did not because we were... For you? Exactly, and in fact the government's position is incoherent because in making their jurisdictional argument, they say we did break it out. They said it was in another invoice. But in making their segregation argument, they say we commingled them. Well, I don't want to say who's incoherent or not because this is pretty incoherent too. I mean, you've got all these invoices that say different things. You have an absolute statement here that says we did a separate coat of paint and that's dutiable. And now you're telling me, no, we protested that, so they should have known that. The protest consists of the entire document filed with CBP, not one statement in the protest memorandum. And CBP, in deciding on this protest, as they rightly should do, they say we protest invoice 3.1-4A. Let's go look at the invoice, what that work includes. And the plain language of that invoice includes all the work that's at issue before this court. The reason the epoxy was not segregated out was because it was being protested. The segregation requirement is that you separate out what you're requesting relief on from what you're not requesting relief on. So, again, your statement on 12-64, we're supposed to ignore. In its entirety. Not just the reference to 15, but the whole statement. I'm telling you it was an erroneous statement that created an ambiguity that the rest of the protest resolved. It created a cognitive dissonance. Yes, it created an incoherence. It doesn't make sense to say we're protesting this invoice, we're not protesting this work, and then look at the invoice and it does include that work. So if you look at it in its entirety, and in fact, if you look at the case law, if you look at the Estee Lauder case in particular, but you could also look at the Mattel case, the Saab case, the Cisco Systems case. In the Estee Lauder case, there was a protest that protested makeup kits that included, and then it listed three items. And the government alleged that didn't include a makeup case that included brush rolls. And the court ruled that, and in fact the Supreme Court has said technical precision is not required, that all that's necessary is that customs be put on notice as the decision protested, the category of merchandise involved, the company's objections, the reasons for those objections, and customs did that in this instance because the plain language of the invoice included in the protest describes the work very clearly as including the entire removal of all coatings, anti-fouling and epoxy, and replacing them all with a modified system. And CBP's decision uses the words coating and paint, which do not exclude the epoxy. What is the amount? And Judge O'Malley, you're talking to the government in reference to 1400. Is that the difference we're talking about? No, the 1400 is the... Do we know what the difference is in the amount? In what portion? No, because the work the government's talking about is a work that was never done. The government seeks to impose duties because we did not segregate out from this 100% regulatory compliance work certain other work that the government alleges... Yeah, but what's wrong with that? So it was never done. I mean, if the rule applied, then you'd go get an estimate for how much it would cost to just fix that portion and you'd come in and you'd segregate it. What's wrong with that is that Section 1466 imposes duties only on work actually performed, not on work that might have been performed under different circumstances. Right, but the duty would be... So you're saying that because it would have been a hypothetical... You can't rip blast the whole hall and then go back and just fix a tiny little spot and estimate how much that would have cost. Is that your argument? Well, that work was never done. There was no spot blasting, there was no... That paint coat that you specifically say occurred, didn't occur? I'm sorry, the work that... On 1264, you say before we rip blasted and before we did the anti-fouling paint, we put a regular... Oh no, that work did occur. So why can't that be separated out? Oh, I see what you're saying. I'm sorry, that could be separated out, but that was being protested. All we need to separate out is the... That's the $64,000 question, but assuming it wasn't protested, you could have segregated it out. I mean, you could have segregated it out and filed a protest on the remaining month, correct? We could have, but the reason, the fact that we didn't is itself evidence that we were protesting it. The regulation cited, 19 CFR 4.14, does not require that one take work on which one requests relief and segregate it up. No, you segregate it from the work you're not requesting relief on. Theoretically, I could say, I am protesting A and I'm not protesting B. But if I submit some other documents that sort of imply that I'm protesting B, then it's the government's problem to figure out that I didn't mean what I said? It's not, you have to look at, I would say yes, in the sense that you have to look at the protest in its entirety. And there's nothing else in the entire protest except for this sentence that's taken in isolation without reference to the actual work performed. The actual work performed is described in the invoice. It's described in the argument that's given. And it was a complete grit blasting to bare metal, which removed both anti-fouling and epoxy, and then a replacement of all tin-bearing coatings with tin-free ones. To get back to Judge Prost's question, the spot blasting and touch-up painting that the government speculates might have occurred under different circumstances. The speculation contradicts the evidence presented at trial, but more than that, it's work that wasn't actually done. Yes, there was a coating of epoxy, but I think there's a confusion there between the segregation between epoxy and anti-fouling, and another segregation that's really the heart of the government's segregation argument, which says there were 10 square meters that had blistering and corrosion on them. Remember, this did not prevent, I'm sorry, my time is up. Just finish your sentence. Okay, that blistering and corrosion did not prevent the Hull coatings from being in good working order, the sole purpose from being IMO compliant, and the Hull coatings from being capable of lasting well beyond the dry docking date, thereby making the trial court's decision that no repair occurred not an error. This court should fully affirm the trial court's decision. Thank you. We can add an extra minute to your time. There is no ambiguity in the protest. The protest specifically excises out the epoxy coating, whether it be in Invoice 15, whether it be in Invoice 14. They said it may be in the invoice, but we are specifically surgically excising it out, and we are specifically not protesting it. And if you look at page 55 of the red brief, it again concedes that it told Customs we are not challenging the epoxy undercoating. The impact of that in your view is that means that all of it becomes dutiable. Yes, it would have had to be segregated out. It could have been segregated out, as you just heard, but it was not, and therefore the entire charge is dutiable. So it's not a question of being able to say that he just didn't have jurisdiction over that one portion, but because he wouldn't have had jurisdiction over that one portion and that one portion is not separated out, then we would have to reverse in its entirety. Is that right? Yes, Your Honor. 19 C.F.R. 414 says you must segregate out dutiable and non-dutiable items. And this case is far different from Cisco Systems and Estee Lauder. In both Cisco Systems and Estee Lauder, you had protest language that was very broad, and the argument there was it's so broad we don't know exactly what it covers. There's no broad language here. There's very specific language. We are specifically telling you we are not protesting this epoxy undercoating. Where is that epoxy undercoating? Invoice 14A or 15? Your Honor, at the protest level, they told us it was invoice 15, page 1. At trial, they say it's now invoice 14. You agree they did clearly protest 14A, right? The invoice 14A, but however— That was the protest. If it had been in there, they specifically excised it out. Invoices are often protested with dutiable and non-dutiable items in them. What do you mean they specifically excised it out by 15? You're saying we can infer from 15 that they specifically excised it out? Oh, no. If you look at GA 1264, which the protest went around, they specifically excised out the charge for the epoxy. They say we are not contesting this. We are not charging this. Whether it is an invoice 14 or 15, it doesn't change the analysis. They specifically told Customs, whether it's a 14 or 15, we are not challenging this. And they, again, conceded in the red brief at page 55 that we told Customs we are not challenging the epoxy undercoating. There was no jurisdiction over that epoxy undercoating. Whether it was invoice 14 or 15, it simply was not protested. And with that, Your Honor, this case must be reversed. Thank you, Mr. Harkins. This case is submitted. Thank you.